# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **DEREK RAULERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:17-CV-1966-VEH** |
| | ) | |
| **NEW SOUTH EXPRESS, LLC, et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a civil action filed by the Plaintiff, Derek Raulerson, against Elwood Staffing Services, Inc. ("Elwood") and New South Express, LLC. ("NSE"), his former joint employers. (Doc. 6). The Plaintiff alleges that after he complained about the Defendants' alleged discrimination against his co-employees, the Defendants retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e-17 ("Title VII").

The case comes before the Court on the Defendants' Motion To Dismiss, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted (the "Motion"). (Doc. 11). For the reasons stated herein, the Motion will be **GRANTED**, but the Plaintiff will be given leave to amend.

## I.    STANDARD

Generally, the Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). However, to survive a motion to dismiss brought under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556) ("*Iqbal*"). That is, the complaint must include enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557 (citation omitted).

Once a claim has been stated adequately, however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 563 (citation omitted). Further, when ruling on a motion to dismiss, a court must "take the factual allegations in the complaint as true and construe them in the light most favorable

to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citing *Glover v. Liggett Group, Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006)).

## II.    FACTS ALLEGED IN THE COMPLAINT

The Amended Complaint alleges:

8. Defendant Elwood . . . is in the business of supplying staffing services to clients[,] such as NSE[,] on a contract basis. Elwood places contingent workers in staffing positions with client companies while employing numerous contract employees to manage its staffing operations.

9. Defendant NSE . . . is in the business of operating a logistics and distribution center that serves the Honda manufacturing plant in Lincoln, Alabama (hereinafter "Honda"). NSE contracted with Elwood to provide temporary employees and other staffing services.

10. Derek Raulerson was a staffing services manager hired by Elwood to work for Elwood and NSE. Derek began his employment on or about July 28, 2014. Raulerson was a joint employee of Elwood and NSE. Working on-site at NSE, Derek's job was to hire and manage Elwood's temporary employees assigned to work for NSE who, in turn, assigned those employees to work at Honda. Derek's performance was supervised by both Elwood and NSE employees.

11. Consistently throughout his employment with Elwood and NSE, Derek was asked to hire or fire employees for discriminatory reasons. On several occasions, Derek was told to create working conditions for pregnant persons[,] [conditions which] were not required of others[,] in an attempt to force said persons to quit. Derek was also forced to re-assign disabled persons who were otherwise fit to perform the work at Honda simply due to the fact that NSE didn't [sic] want to send "people like that" to Honda.

12. Derek strenuously objected to NSE and Elwood's demands and

complained repeatedly of these discriminatory practices to Elwood, NSE, and ultimately to Honda Logistics of North America. Derek was told that an investigation was undertaken by Honda, but he was never informed as to the findings of any such investigation.

13. After Derek opposed and complained about the unlawful discrimination taking place at Elwood and NSE, he was retaliated against, harassed, and ultimately fired. Derek's supervisor at Elwood told him that he was being fired not because he did not perform his job well, but because NSE did not approve of his complaints about [its] discriminatory employment practices and "wanted him gone." Derek had never previously been disciplined by Elwood or NSE; in fact, he had received only excellent performance reviews during his employment with the Defendant companies.

14. Derek communicated to Elwood that he was due a monetary bonus earned from work he had performed prior to his termination as well as a monetary sum for unused vacation days per Elwood's customary practices for other employees. The sum of both payments was approximately $4,200. Derek has yet to receive payment for either amount due in retaliation against his complaining about the Defendants' unlawful discrimination.

(Doc. 6 at 2-4, ¶¶8-14).

Count One, the only count in the Amended Complaint, states that the Plaintiff's retaliation claim is brought "pursuant to Title VII of the Civil Rights Act of 1964." (Doc. 6 at 4, ¶16). The Amended Complaint alleges that the Plaintiff "repeatedly complained of the said discriminatory practices," and "[a]fter learning of Plaintiff[']s report of discrimination to Honda, the Defendants retaliated against, harassed, and ultimately fired the Plaintiff." (Doc. 6 at 4, ¶¶19, 20).

## III.  ALLEGATIONS IN THE EEOC CHARGES[1]

On September 23, 2016, the Plaintiff filed a Charge of Discrimination against Elwood with the Equal Employment Opportunity Commission (the "EEOC"). (Doc. 11-1). In that charge, the Plaintiff checked the box marked "Retaliation," and stated:

> I am a worker hired by the above named employer [on] July 28, 2014, as an onsite manager. I performed my job on a satisfactory level. I submitted a complaint to New South Express'[s] Vice-President of Operations after a disabled candidate for employment was discriminated against by the Sr. Human Resource Representative on February 11, 2016. In April 2016, the New South Express Vice-President of Operations transferred out of his position. On June 9, 2016, I was discharged and told the New South Express Sr. Human Resource Representative no longer wanted me on the premises.
>
> I believe I was retaliated against due to submitting a complaint on behalf of a disabled candidate in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Doc. 11-1 at 2). The charge is signed and verified by the Plaintiff.

On September 23, 2016, the Plaintiff filed a Charge of Discrimination against

---

[1] The court may consider both of the EEOC charges filed in this case and the EEOC Intake Questionnaire submitted by the Plaintiff without converting the Motion to a Motion for Summary Judgment. "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *Speaker v. U.S. Dep't of Health & Human Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (internal quotations and citations omitted). The charges are mentioned in the Amended Complaint, and both of the charges, and the questionnaire, are central to the Plaintiff's claims. Their authenticity is not in dispute. They are properly considered without converting the Motion. *See*, *Chesnut v. Ethan Allen Retail, Inc.*, 971 F. Supp. 2d 1223, 1229 (N.D. Ga. 2013) (Batten, J.) (on the issue of exhaustion of administrative remedies, intake questionnaire and charges properly considered without converting motion to dismiss into a motion for summary judgment).

NSE with the EEOC. (Doc. 11-2). In that charge, the Plaintiff also checked the box marked "Retaliation," and included the identical factual statement from his other charge. That charge also is signed and verified by the Plaintiff.

## IV.    EEOC INTAKE QUESTIONNAIRE[2]

Before he filed the charges set out above, the Plaintiff completed an "Intake Questionnaire" with the EEOC. (Doc. 16-2). In that document the Plaintiff checked the box for "Retaliation," and stated that he believed that he was discriminated against when, on June 9, 2016, he was discharged. (Doc. 16-2 at 3). The Plaintiff listed Stephanie Burton as a witness to his retaliation and wrote that "[s]he can confirm I was retaliated against for reporting a potential EEOC and OSHA claim against Elwood's client NSE." (Doc. 16-2 at 5). The Plaintiff also listed Alan Balmer as a witness to the retaliation against him and wrote that he "can confirm NSE Senior Manager's displeasure with me reporting the EEOC charge." (Doc. 16-2 at 5).

In a statement attached to the questionnaire, the Plaintiff wrote:

> I was a staffing services manager for Elwood Staffing (Elwood). I was assigned at New South Express (NSE) and my job was to hire employees through Elwood that worked for NSE. Elwood and NSE were my joint employers. I was supervised by both Elwood and NSE employees. NSE directed the hiring and firing of Elwood employees assigned at NSE. NSE is the logistics arm for Honda Manufacturing of Alabama. So, my job involved hiring employees who worked for NSE at

---

[2] *See* note 1.

Honda Manufacturing in Lincoln, AL.

Consistently and pervasively during my employment I was asked to hire or fire employees for discriminatory reasons. I was told to create working conditions for pregnant persons[,] [which] were not required of others[,] in an attempt to force them to quit. I was forced to re-assign disabled persons who were otherwise fit to perform the work at Honda Manufacturing just because NSE didn't [sic] want to send "people like that" to Honda. I complained repeatedly to Elwood, NSE[,] and ultimately to Honda Logistics of North America. In February 2016[,] I lodged a serious complaint about the hiring practices of Elwood and NSE. NSE claimed they investigated the complaint[,] but I was never told the result of any investigation.

After I complained, I was harassed at my job and told by my supervisor at Elwood that NSE did not like me and "wanted me gone[.]"[] All my performance reviews were excellent. I was never disciplined or written up by Elwood or SE.

On June 9, 2016[,] I was fired by my supervisor at Elwood. I was told that my termination was not because I did not do my job well but because NSE "wanted me gone[.]"[]

I have been discriminated against in retaliation for my complaints to Elwood and NSE about their discriminatory hiring practices. I oppos[ed] the unlawful discrimination of Elwood and NSE and for that reason I was fired.

(Doc. 16-2 at 6).

Printed form language on the questionnaire states:

The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.S(c), this questionnaire may serve as a charge if it meets the elements of a charge.

(Doc. 16-2 at 5). The questionnaire also states:

> If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights.

(Doc. 16-2 at 5). The Plaintiff also checked the box on the questionnaire noting that he "want[s] to file a charge of discrimination." (Doc. 16-2 at 5). Although the version of the questionnaire in the record is unsigned, the Defendants have represented that the version given to the EEOC, the same version of the questionnaire which the Defendants received only in response to a Freedom of Information Act ("FOIA") request, is signed. (Doc. 17 at 7, n. 4). No version of the questionnaire is verified.[3]

## V.     ANALYSIS

### A.     <u>The Amended Complaint Does Not State a Claim for Disability Discrimination</u>

The Amended Complaint alleges that the Defendants' discriminated against employees based on pregnancy and disability. Specifically, the Plaintiff claims that he was retaliated against by the Defendant after he "complained repeatedly of these discriminatory practices." (Doc. 6 at 3). Importantly, the Plaintiff's discrimination claim

---

[3] In his response in opposition to the Motion To Dismiss, the Plaintiff alleges that he also listed the names of two women he identified as "white, female, pregnant." (Doc. 16 at 4). The intake questionnaire contains no such notations.

is brought <u>only</u> pursuant to Title VII.

Title VII prohibits employers from "discriminating against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). In addition, Title VII makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." The Pregnancy Discrimination Act (the "PDA"), enacted in 1978, added, in pertinent part, the following language to Title VII:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 2000e-2(h) of this title shall be interpreted to permit otherwise.

42 U.S.C.A. § 2000e(k). Accordingly, Title VII, as amended by the PDA, provides a cause of action for retaliation in response to the Plaintiff's complaints of discrimination based upon <u>pregnancy</u>. There is, however, no Title VII claim for the Defendant's alleged retaliation against the Plaintiff for his complaints of <u>disability</u> discrimination. Any such claim should have been made under the Americans with Disabilities Act, 42

U.S.C. §§12101-12213 (the "ADA").[4] Therefore, as currently pleaded, the Amended

Complaint does not set out a claim for retaliation in response to the Plaintiff's

complaints of disability discrimination.

**B.    The Plaintiff Failed To Exhaust His Administrative Remedies Prior to Filing His Pregnancy Discrimination Claim**

Prior to filing a Title VII or ADA action, a plaintiff must first file a charge of

discrimination with the EEOC. *Gregory v. Georgia Dep't of Human Res.*, 355 F.3d

1277, 1279 (11th Cir. 2004) (Title VII); *E.E.O.C. v. Summer Classics, Inc.*, 471 F.

App'x 868, 869 (11th Cir. 2012) (ADA) (citing 42 U.S.C. § 2000e–5(e)(1) and 29

C.F.R. § 1626.7(a)).

> "The purpose of this exhaustion requirement is that the EEOC should
> have the first opportunity to investigate the alleged discriminatory
> practices to permit it to perform its role in obtaining voluntary compliance
> and promoting conciliation efforts." [*Gregory*, 355 F.3d at 1279]
> (quotations omitted). We have further noted that judicial claims are
> allowed if they "amplify, clarify, or more clearly focus" the allegations in
> the EEOC complaint, but have cautioned that allegations of new acts of
> discrimination are inappropriate. *Id*. at 1279-80. In light of the purpose of
> the EEOC exhaustion requirement, a plaintiff's judicial complaint is
> limited by the scope of the EEOC investigation that can reasonably be
> expected to grow out of the charge of discrimination. *Id*. at 1280. Courts

---

[4] The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). The ADA also prohibits retaliation, providing that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C.A. § 12203(a).

are nonetheless extremely reluctant to allow procedural technicalities to bar claims brought under Title VII, as such, we have noted that the scope of an EEOC complaint should not be strictly interpreted. *Id.*

*Litman v. Sec'y, of the Navy*, 703 F. App'x 766, 771 (11th Cir. 2017).

The EEOC charges filed by the Plaintiff allege only one instance of protected activity–the Plaintiff's complaint regarding "a <u>disabled</u> candidate for employment [who] was discriminated against by the Sr. Human Resource Representative on February 11, 2016." (Doc. 11-1 at 2; doc. 11-2 at 2) (emphasis added). The Defendants argue that the pregnancy discrimination claim must be dismissed because neither EEOC charge filed by the Plaintiff in this case mentions complaints regarding pregnancy, or retaliation against the Plaintiff for making such complaints.[5]

In support of their argument, the Defendants cite *Chanda v. Engelhard/ICC*, 234 F.3d 1219 (11th Cir. 2000). In *Chanda*, the complaint alleged "retaliatory discharge under Title VII." *Chanda*, 234 F.3d at 1221. The court stated that the plaintiff's EEOC charge "appears to allege retaliation for complaining of discrimination based on his <u>disability</u>." *Id.* at 1225 (emphasis added). The court noted that the plaintiff

checked the "retaliation" box as well as the "disability" box on his EEOC papers and in the "particulars" section thereof wrote "I also complained about discrimination." Chanda's affidavit . . . states that he was "retaliated against because [he] complained both verbally and in writing about discrimination due to [his] disability."

---

[5] No version of the word "pregnant" appears anywhere in either charge.

*Id.* at 1224–25. The plaintiff's complaint, however,

> couch[ed] it as a ethnic discrimination claim. Counsel for [the plaintiff] also briefly discussed the retaliation claim at oral argument, basing it on national origin discrimination, and [the plaintiff's] brief asserts retaliation because he claimed national origin discrimination.

*Id.* at 1225. The Eleventh Circuit affirmed the dismissal of the Title VII claim, writing:

> Nothing in his EEOC filing mentions discrimination based on national origin, any complaint about such discrimination, or a claim under Title VII. We must conclude, therefore, that a reasonable investigation based on the EEOC charge did not and would not encompass retaliation based on complaints about national origin discrimination.

*Id.* at 1225.

*Chanda* is directly on point. Like in *Chanda*, in the instant case the Plaintiff's retaliation claim is based on protected conduct, complaints regarding pregnancy discrimination, which did not appear in either of his charges. Accordingly, this court concludes, like the Eleventh Circuit did in *Chanda*, that a reasonable investigation based on the EEOC charge would not encompass retaliation based on complaints of pregnancy discrimination. Therefore, the Plaintiff did not exhaust his administrative remedies regarding that claim and it must be dismissed.

On this issue, the Plaintiff cites only one case, *Jacobs v. Henderson*, No. CIV.A. 99T1357N, 2001 WL 34866606 (M.D. Ala. Nov. 20, 2001) (Thomson, J.). In that case, in the plaintiff's charge of discrimination the "race," "sex," and "age" discrimination boxes-but not the "disability" box-were checked. *Jacobs*, 2001 WL

34866606, at *3. Judge Thompson held that the plaintiff's disability claim

> could reasonably have been expected to grow out of his initial charges of
> discrimination because of (1) the disability-related nature of his factual
> allegations, (2) his express use of the category "disability discrimination"
> in his precomplaint form, and (3) the investigative agency's duty . . . to
> investigate the possibility of statutory violations other than those charged
> by the plaintiff when there is a basis in the record for such an expansion
> of the investigation.

*Id.* at *10. Even if *Jacobs* were binding on this Court, it is factually distinguishable.

There is no factual basis in the instant charges for an investigation into complaints of

pregnancy discrimination, or retaliation therefor.

The Plaintiff argues that the necessary factual basis appears in the Intake

Questionnaire, which, as this Court noted previously, includes the Plaintiff's statement

that he "was told to create working conditions for pregnant persons[,] [which] were not

required of others[,] in an attempt to force them to quit," that he "complained

repeatedly," and that afterwards he was "harassed at [his] job" and ultimately

terminated. (Doc. 16-2 at 6).

The Eleventh Circuit considered this very issue in *Francois v. Miami Dade Cty.,

Port of Miami*, 432 F. App'x 819 (11th Cir. 2011). In *Francois*, the district court had

ruled that the plaintiff's national origin discrimination retaliation claim was barred

because Plaintiff included no such claim in his charge. The plaintiff argued that he had

fulfilled the exhaustion requirement because the claim was included in his intake

questionnaire. The Eleventh Circuit affirmed the dismissal, writing:

The law is clear that a charge must be verified—i.e., written under oath or affirmation—in order to support a valid judicial suit. 42 U.S.C. § 2000e–5(b); [*Vason v. City of Montgomery, Ala.*, 240 F.3d 905, 907 (11th Cir.2001)]. Additionally, "charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.' " *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir.2000) (quoting 29 C.F.R. § 1601.12(a)(3)), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n. 52 (11th Cir.2003) (en banc ).

Though we have never directly addressed the effect of an intake questionnaire for exhaustion purposes, we have considered the interrelationship between an EEOC charge and an intake questionnaire several times when assessing whether a charge has been timely filed. In *Wilkerson v. Grinnell Corporation* we held an intake questionnaire could be considered a charge for the purpose of satisfying the statute of limitations where: the questionnaire was verified; the questionnaire contained the basic information required by a charge; and the form's language could have been interpreted to represent a charge. 270 F.3d 1314, 1320–21 (11th Cir.2001).

This is not the general rule, however. In one case, we stated that, "as a general matter an intake questionnaire is not intended to function as a charge." *Pijnenburg v. West Georgia Health Sys., Inc.*, 255 F.3d 1304, 1305 (11th Cir.2001) (emphasis added). Therefore, we held the plaintiff's unverified intake questionnaire did not satisfy Title VII's timely filing requirement, as it did not notify her employer of her claim or initiate the EEOC investigation. *Id.* at 1306. In a second case, we similarly held a plaintiff's intake questionnaire, which was filed along with an affidavit, did not satisfy the requirements of a timely charge. *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1241 (11th Cir.2004). There, after considering the law set forth in *Wilkerson*, we noted the circumstances did not support a conclusion that the questionnaire satisfied the timely filing requirement, because: the plaintiff clearly understood the intake questionnaire was not a charge because he later filed a timely charge; the EEOC did not initiate its investigation until after the plaintiff filed his charge; and the questionnaire form itself did not suggest it was a charge. *Id.*

Without definitively deciding whether an EEOC intake

questionnaire may ever be considered when determining whether a plaintiff's . . . claim has been exhausted, we hold the district court correctly granted summary judgment in this case. First, if only the EEOC charge itself should have been considered, Francois failed to administratively exhaust his national origin discrimination claim because he did not check the box for national origin, or allege any facts in the narrative section that could be construed to raise such a claim of discrimination.

Second, even if an intake questionnaire can be taken into account under certain circumstances, the facts do not support doing so here. As in *Pijnenburg*, undisputed evidence showed Francois's intake questionnaire was not verified, and the form language did not indicate it would be considered a charge when a plaintiff also filed a timely charge, as Francois did. Furthermore, the fact Francois filed an actual timely charge suggests he did not intend his intake questionnaire to function as a charge. *See Bost*, 372 F.3d at 1241.

Finally, none of the evidence demonstrated Miami was on notice of the national origin claim. Moreover, the EEOC did not investigate the national origin discrimination claim. Thus, the district court did not err when it concluded Francois did not fulfill the purposes of exhaustion. *See Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 877 (11th Cir.1986) (noting the filing of an EEOC charge serves two purposes: to put the defendant on notice of the claim, and to give the EEOC an opportunity to settle the grievance).

*Francois*, 432 F. App'x at 821–22.

The Court is persuaded by the reasoning in *Francois*.[6] Like in *Francois*, in the instant case the intake questionnaire was not verified. Furthermore, the Plaintiff does not contend that he thought his questionnaire was a charge. Even if he did, just like in *Francois*, the form language on the questionnaire used in this case made it clear that

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." Eleventh Cir. Rule 36-2.

the Plaintiff, despite completing the questionnaire, still needed to file a timely charge. *See*, *Davis v. Alabama Dep't of Transportation*, No. 2:16CV583-MHT-WC, 2017 WL 4391730, at *10 (M.D. Ala. Aug. 2, 2017) (Capel, M.J.) (form language regarding the need to file a timely charge "indicates that [p]laintiff must take additional action outside of the action taken in submitting the Questionnaire in order to file an EEOC charge"). Also like in *Francois*, the Plaintiff filed two timely charges after completing the questionnaire, the Plaintiff does not contend that the Defendant was ever put on notice of the pregnancy discrimination retaliation claim[7], and there is no contention that the EEOC <u>actually investigated that claim</u>. *See, Kellam v. Indep. Charter Sch.*, 735 F. Supp. 2d 248, 253 (E.D. Pa. 2010) (Joyner, J.) ("If a claim is initially mentioned in the charge questionnaire but is not included in the formal charge, then this claim is not exhausted. Indeed, to allow a plaintiff to initially raise a claim with a Charge Questionnaire and then abandon it in his formal charge only to reassert that claim in federal court would completely subvert the exhaustion requirement."); *Donnelly v. St. John's Mercy Med. Ctr.*, 635 F. Supp. 2d 970, 999 (E.D. Mo. 2009) (Shaw, J.) ("Only the charge is sent to the employer, and therefore only the charge can affect the process of conciliation.") (internal quotations and citations omitted).

The Plaintiff also argues that his pregnancy discrimination retaliation claim

---

[7] Again, the Defendants only received notice of the allegations in the Intake Questionnaire as a result of their FOIA request.

should be allowed because his charge clearly mentions disability discrimination and "[a]ccording to the EEOC, a pregnant person is considered disabled." (Doc. 16 at 3). The Plaintiff is incorrect. *See*, *EEOC Enforcement Guidance on Pregnancy Discrimination and Related Issues,* No. 915.003, June 25, 2015 (https://www.eeoc.gov/laws/guidance/pregnancy_guidance.cfm) ("[P]regnancy itself is not an impairment within the meaning of the ADA, and thus is never on its own a disability, [but] some pregnant workers may have impairments related to their pregnancies that qualify as disabilities under the ADA, as amended."); *see also,* 29 C.F.R. § Pt. 1630, App., §1630.2(h) ("Other conditions, such as pregnancy, that are not the result of a physiological disorder are also not impairments."). The allegations in the Intake Questionnaire do not satisfy the exhaustion requirement. The Plaintiff's claims that his employer retaliated against him based on his complaints of pregnancy discrimination are therefore barred.

### C. The Plaintiff Did Not Exhaust His Administrative Remedies to the Extent That He Claims That He Was Harassed by the Defendants or Denied a Bonus or Vacation Pay

In his Amended Complaint, the Plaintiff claims:

13. After Derek opposed and complained about the unlawful discrimination taking place at Elwood and NSE, he was retaliated against, harassed, and ultimately fired. Derek's supervisor at Elwood told him that he was being fired not because he did not perform his job well, but because NSE did not approve of his complaints about [its] discriminatory employment practices and "wanted him gone." Derek had never previously been disciplined by Elwood or NSE; in fact, he had received

only excellent performance reviews during his employment with the Defendant companies.

14. Derek communicated to Elwood that he was due a monetary bonus earned from work he had performed prior to his termination as well as a monetary sum for unused vacation days per Elwood's customary practices for other employees. The sum of both payments was approximately $4,200. Derek has yet to receive payment for either amount due in retaliation against his complaining about the Defendants' unlawful discrimination.

(Doc. 6 at 3-4). The Defendants claim that, to the extent these paragraphs allege that the Defendants "harassed" the Plaintiff and denied him vacation and bonus pay, the Plaintiff has failed to exhaust his administrative remedies, since these acts were not alleged in the Plaintiff's charges. (Doc. 11 at 8).

The Eleventh Circuit addressed this issue in *Green v. Elixir Indus., Inc.*, 152 F. App'x 838 (11th Cir. 2005). In *Green*, the plaintiff alleged in his charge of discrimination that he was terminated because of his race in violation of Title VII. In his judicial complaint, he alleged "both racial hostile environment discrimination and racially-motivated termination in violation of Title VII and § 1981." *Green*, 152 F. App'x at 840. In holding that the hostile work environment claim had not been exhausted, the Eleventh Circuit wrote:

[A]ll of the factual allegations contained in Green's EEOC charge relate to his termination and none relate to a retaliation claim. He noted the date of his termination as both the earliest and latest date of discriminatory conduct; explained that his termination ostensibly stemmed from attendance policy violations; and stated that white males with inferior attendance records were retained. Nothing in Green's EEOC charge

related to incidents of harassment, nor did anything mention the dates on
which they occurred. Because the facts alleged in Green's EEOC charge
form cannot be said to encompass a hostile work environment claim, we
affirm the district court's finding that his claim was therefore procedurally
deficient.

*Id.* at 840–41. Similarly, in the instant case the only retaliatory act which was alleged

in the Plaintiff's charges was the Plaintiff's termination. He alleges that the latest date

of discrimination was June 9, 2016, the date he was terminated, not some later date on

which the Defendants refused to pay him vacation and bonus pay.[8]

The Plaintiff argues:

The courts have made clear that when cases of retaliation when the
totality of circumstances, rather than a single discrete event, illustrate
discriminatory animus, all those circumstances can be subject to the
resulting lawsuit. *Ward v. Glynn Cnty Bd. Of Comm'rs*, [] 2016 WL
4269041 at 39-40 (distinguishing cases like the instant one from the case
*Green v. Elixir* cited by Defendants because it involved a single action of
retaliation).

(Doc. 16 at 7).  Importantly, in *Ward,* unlike in the instant case*,* the plaintiff's charge

actually included factual allegations of several allegedly discriminatory acts occurring

close in time to a discrete event. The court in *Ward* wrote:

As Plaintiff's EEOC charge in this case alleges that Defendant engaged in
a series of discriminatory acts over a period of time, and that such
conduct was sufficiently severe as to prevent Plaintiff from remaining in
the Data Analyst position, the charge sets forth facts that reasonably

---

[8] The charges do state that the earliest date of discrimination was February 11, 2016.
However, the narrative facts in the charges state that that was the date when "a disabled candidate
for employment was discriminated against." (Doc. 11-1 at 2; doc. 11-2 at 2). Further, that date is
not associated with any of the Plaintiff's allegations of harassment.

encompass a claim of a hostile work environment.

*Ward,* 2016 WL 4269041, at *14. However, the court did <u>not</u> allow claims based on other incidents which "were not part of the continuing violation set forth in the EEOC charge and thus were not timely pursued." *Id.*[9]

The Court is persuaded by the decision in *Green*. The facts alleged in the Plaintiff's EEOC charges cannot be said to encompass claims for harassment or the denial of bonus and vacation pay. These claims, having not been administratively exhausted, are due to be dismissed.[10]

## VI. CONCLUSION

For the reasons stated above, the Complaint, as currently pleaded, fails to state a claim upon which relief may be granted. Accordingly, the Motion To Dismiss is **GRANTED**. However, the Court holds that the EEOC's investigation of the allegations in the charges would have covered a claim under the ADA for retaliation. Accordingly, the Plaintiff will be given one additional opportunity, **consistent with the**

---

[9] The Plaintiff argues that his case is somehow different from the "typical retaliation case" because "the Defendants are retaliating against [the] Plaintiff because he is protecting the rights of others." The Court finds no merit in this underdeveloped and unsupported argument.

[10] The Plaintiff argues that "[i]n his intake questionnaire [he] made clear that the retaliatory behavior included harassment." (Doc. 16 at 7). He contends that this allegation covers the refusal to pay bonuses and vacation pay. (Doc. 16 at 7-8). This argument fails for the same reasons it failed in the preceding section. Furthermore, in his questionnaire, the Plaintiff identified only one discriminatory act engaged in against him--his discharge. (Doc. 16-2 at 3, ¶5).

**holdings in this opinion**, to amend his Complaint to add an ADA claim.[11] Any such amendment should be filed no later than May 11, 2018. **If no amendment is filed by that date, this case will be dismissed with prejudice pursuant to Rule 12(b)(6) and Rule 41(b).**

      **DONE** and **ORDERED** this 27th day of April, 2018.

_signature_

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[11] The Plaintiff has requested leave to amend in lieu of dismissal. (Doc. 16 at 9). Furthermore, the Defendants have recognized the likelihood that this Court might determine that an ADA claim was exhausted and have argued that, in such case, the Court "should order Plaintiff to replead that claim with clarity and to remove the extraneous allegations of retaliatory denial of bonus or vacation pay." (Doc. 11 at 11).